IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM LEE and JOANNE MCPARTLIN, Individually, and as Representatives of plan participants and plan beneficiaries of the VERIZON MANAGEMENT PENSION PLAN, | § § § § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:12-CV-4834-D |
| VS. | § § | |
| VERIZON COMMUNICATIONS INC., et al., | § § § | |
| Defendants. | § § | |

MEMORANDUM OPINION
AND ORDER

Plaintiffs bring this action challenging the decision of an ERISA[1] pension plan sponsor to remove a group of employees from the plan and fund their benefits through the purchase of a single premium group annuity contract from a third party. Plaintiffs apply for a temporary restraining order ("TRO") and a preliminary injunction to enjoin the proposed transaction.[2] For the reasons that follow,[3] the court denies the motions.

---

[1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

[2]Plaintiffs applied for a TRO on November 28, 2012. They originally opposed defendants' suggestion that their TRO application be treated as a motion for a preliminary injunction. *See* Ps. Nov. 29, 2012 TRO Reply Br. 2. After the court pointed out in its order setting briefing schedule that a denial, if any, of their TRO application would not be appealable, plaintiffs filed a motion for preliminary injunction "on the same grounds as they have applied for a [TRO]." Ps. Prel. Inj. Mot. 3. Accordingly, both plaintiffs' TRO application and their motion for preliminary injunction are pending for decision at this time.

I

Plaintiffs William Lee and Joanne McPartlin, individually and as representatives of plan participants and plan beneficiaries of the Verizon Management Pension Plan (the "Plan"), bring this action for declaratory and injunctive relief against defendants Verizon Communications Inc., Verizon Corporate Services Group Inc., Verizon Employee Benefits Committee, Verizon Investment Management Corp., and Verizon Management Pension Plan (collectively, "Verizon," unless the context otherwise requires); and Prudential Insurance Company of America ("Prudential"). On October 17, 2012 Verizon Communications Inc. entered into a Definitive Purchase Agreement with Prudential[4] pursuant to which the Plan is purchasing a single premium group annuity contract from Prudential to settle approximately $7.5 billion of the Plan's pension liabilities. The transaction is scheduled to close on December 10, 2012. Once the annuity contract is issued, Prudential will assume the obligation to make future annuity payments to approximately 41,000 Verizon management retirees who began receiving pension payments from the Plan before January 1, 2010. Each retiree's annuity payment will be in an amount equal to the retiree's current pension benefit.

---

Because a TRO is "simply a highly accelerated and temporary form of preliminary injunctive relief," and requires plaintiffs to establish the same four elements, *see Hassani v. Napolitano*, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009) (Fitzwater, C.J.), the court will address both motions together.

[3]Pursuant to Fed. R. Civ. P. 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

[4]Verizon Investment Management Corp. and Fiduciary Counselors Inc. are also parties.

The annuity contract will provide the same rights to future payments, such as survivor benefits, as each retiree currently has.[5]  After the transaction is closed, the 41,000 retirees will no longer be participants under the Plan.[6]  The Plan will continue, however, for participants and beneficiaries who are not covered by the transaction.  *See* Ps. App. 61-62 (containing amended Section 8.3, which authorizes and defines Verizon's annuity purchase).

Plaintiffs object to the proposed transaction, contending that their pension benefits will no longer be governed by ERISA, thus removing ERISA's protections and rights and eliminating the pension protection provided by the Pension Benefits Guaranty Corporation ("PBGC"). Plaintiffs move to enjoin the closing of the transaction on the following grounds: (1) Verizon violated ERISA § 102(b) by not disclosing in the summary plan description ("SPD") that it retained the right to transfer its pension obligations to an insurance company; (2) Verizon breached its fiduciary duties, in violation of ERISA § 404(a)(1); and (3) Verizon violated ERISA § 510 by discriminating against the group of affected retirees for the purpose of interfering with their rights under the Plan.[7]  Verizon and Prudential oppose plaintiffs'

---

[5]Plaintiffs do not contend that the annuity contract will decrease the amount of benefit payments or the right to payments.

[6]These retirees will no longer be "plan participants" because, under ERISA-based regulations, an individual is not a plan participant if the individual's entire benefit rights are "fully guaranteed by an insurance company," and the annuity contract satisfies other regulatory requirements. *See* 29 C.F.R. § 2510.3-3(d)(2)(ii) (2012); Ps. App. 61-62 (Section 8.3 stating requirements for annuity contract).  The parties agree that the pensions of these retirees will no longer be protected by ERISA and the Pension Benefits Guaranty Corporation.

[7]Plaintiffs also appear to bring a free-standing claim for equitable relief under ERISA §§ 502(a)(2), (3).  Sections 502(a)(2) and (3), however, do not authorize "'appropriate

motions for a TRO and preliminary injunction.[8]

## II

"The decision whether to grant a preliminary injunction is within the discretion of the court, but it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F.Supp.2d 792, 794 (N.D. Tex. 2012) (Fitzwater, C.J.) (citing *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir.1985)).  To obtain a preliminary injunction, plaintiffs must establish each of the following: (1) a substantial likelihood that they will prevail on the merits; (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to them outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest.  *E.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision).

---

equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing any] violations or . . . enforc[ing] any provisions' of ERISA or an ERISA plan." *Peacock v. Thomas*, 516 U.S. 349, 353 (1996) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993)) (alterations and emphasis in original).  Therefore, plaintiffs have failed to show a substantial likelihood that they will prevail on the merits of a free-standing claim for equitable relief.

[8]The motions for a TRO and preliminary injunction are before the court under the procedure permitted by Rule 43(c) and are being decided on the papers, without an evidentiary hearing.  *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

III

The court turns first to whether plaintiffs have established a substantial likelihood that they will prevail on the merits.

Plaintiffs assert that Verizon violated ERISA § 102(b) by not disclosing in the SPD that it retained the right to remove retirees' pension benefits from the Plan and transfer the obligations to an insurance company. An SPD must contain certain information, including a description of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(b). Plaintiffs have failed to show that the proposed annuity transaction is a circumstance that may result in "loss of *benefits*" because the annuity contract will provide for the continued payment of the participant's pension benefit in the same form that was in effect under the Plan immediately before the annuity purchase, with the same rights to future benefits. In fact, plaintiffs do not challenge the annuity contract on the basis that it will affect the amount or right to benefits.

Furthermore, § 102(b) requires a description of a plan's current terms, not a disclosure of changes that may occur. *See Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 935 (5th Cir. 1993) ("Section 1022(b) relates to an individual employee's eligibility under then existing, current terms of the Plan and not to the possibility that those terms might later be changed, as ERISA undeniably permits."); *see also Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 430 (5th Cir. 2003) (holding there is no affirmative duty to disclose in SPD the possibility of future plan changes). The requirement of § 102(b) to disclose "circumstances which may result in . . . loss of benefits" therefore refers to such circumstances under *current* plan terms,

not to the possibility of plan changes that may affect benefits. And § 102(a) requires that an SPD "be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations *under the plan*," while also referring to the procedure for informing participants and beneficiaries of material modifications to the plan. *See* § 1022(a) (emphasis added). Once a material modification to a plan occurs, a plan sponsor need not furnish a summary description of the change until 210 days after the end of the plan year in which the change is adopted. *See* §§ 1022(a) and 1024(b)(1). And plaintiffs' contention is further undermined by the fact that the SPD at issue here states that Verizon "reserves the unlimited right to amend, modify, suspend, terminate or partially terminate the plan at any time, at [its] discretion, with or without advance notice to participants." Ps. App. 17.

The court concludes that plaintiffs have failed to establish a substantial likelihood that they will prevail on their § 102(b) claim.[9]

---

[9]Plaintiffs also assert that Verizon's nondisclosure in the SPD breached a general fiduciary duty to inform plaintiffs of material information. The court disagrees. Plaintiffs have failed to establish a substantial likelihood that Verizon has violated the requirements under ERISA § 102. And as the Fifth Circuit has held, there is no affirmative duty to disclose the possibility of future plan changes. *See Martinez*, 338 F.3d at 430.

IV

Plaintiffs maintain that Verizon breached its fiduciary duties, in violation of ERISA § 404(a)(1), because the Plan documents do not authorize the annuity contract; Verizon failed to act in the retirees' best interest; and the annuity contract constitutes a failure to diversify the investments of the Plan in violation of § 404(a)(1)(C).

A

The court first addresses plaintiffs' contention that the Plan documents do not authorize the annuity transaction, thus constituting a breach of Verizon's fiduciary duty to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). The purchase of the annuity contract is expressly authorized by Verizon's amendment to Section 8.3 of the Plan, adopted October 17, 2012 and effective December 7, 2012. Therefore, for plaintiffs to establish a substantial likelihood that the transaction violates the Plan, they must show that providing benefits via an annuity otherwise violates the Plan.

Plaintiffs rely on Section 8.5, which requires that "all property of the Pension Fund . . . shall be used for the exclusive benefit of [Plan beneficiaries] and shall be used to provide benefits under the Plan and to pay the reasonable [administrative] expenses." Ps. App. 25. Plaintiffs posit that using Plan funds to purchase an annuity outside the Plan violates the mandate that Plan assets only be used "to provide benefits *under the Plan.*" *Id.* (emphasis added). The court disagrees.

Section 8.5 is part of the Funding Article of the Plan. Its intent is to ensure that, with

specified exceptions, contributions to the pension fund and all fund property are used for the exclusive benefit of Plan beneficiaries. There is no intention in Section 8.5 to restrict how Verizon provides benefits, provided that contributions, investment income, and the like are used exclusively for intended beneficiaries. And if Section 8.5 were interpreted as plaintiffs posit, Verizon would effectively be precluded from exercising its right to amend the Plan, a result that the Plan's text does not support.

Plaintiffs have not shown that any part of the proposed transaction violates the requirements of Section 8.5, because the annuity contract will provide for the continued payment of the participants' pension benefits in the same form and amount that was in effect under the Plan immediately before the annuity purchase, with the same rights to future benefits. In fact, plaintiffs do not suggest that the Plan assets used to purchase the single premium group annuity contract will be used for a purpose other than to provide the benefits that the Plan participants now receive.[10]

Plaintiffs also rely on Section 11.3 of the Plan. Section 11.3 prescribes requirements for merging the Plan or transferring its assets or liabilities to another plan. This section merely restates the requirements already imposed by ERISA § 208, 29 U.S.C. § 1058 (prohibiting mergers or transfers unless resulting plan, if then terminated, would provide beneficiaries with benefit equal to or greater than benefit they would have been entitled to receive immediately before transfer). Section 11.3 only addresses mergers and transfers to

---

[10]Plaintiffs make a similar argument relying on exclusive benefit language in the Bell Atlantic Master Trust agreement. The court declines to accept this argument as well.

another plan; it does not implicate any other types of plan transactions like the annuity transaction here. Therefore, amended Section 8.3 does not violate Section 11.3.

Plaintiffs next contend that the Plan only discusses the purchase of annuities in the context of plan termination. The court disagrees that this presents a conflict with amended Section 8.3. The provisions that plaintiffs cite, Sections 12.3 and 12.7, have no bearing on whether Verizon can amend the Plan to authorize an annuities purchase in another contract. *See* Ps. App. 33.

Plaintiffs' final contention is that Section 8.3 does not apply to beneficiaries who began retirement before January 1, 2002. Plaintiffs interpret Section 1.2 of the Plan to dictate that a beneficiary's rights are governed by the terms of the pension plan in effect upon retirement. When plaintiffs retired, a provision in their applicable pension plan stated that no change or termination could "adversely affect the rights . . . to any benefit or pension" without consent. *See* Ps. App. 286 (Section 15.1(c)). But plaintiffs do not contend that the annuity contract adversely affects the rights "to any benefit or pension." They acknowledge that the annuity contract guarantees the same amount of benefits and the same rights to future benefits.

Plaintiffs have failed to establish a substantial likelihood of success on the merits based on any of these grounds.

B

Plaintiffs contend that the annuity contract breaches the duty of loyalty to act in the beneficiaries' best interest under ERISA § 404(a). They maintain that the annuity contract

harms their interest by removing them from the Plan and the attendant protections offered by ERISA and the PBGC.

Plaintiffs' fiduciary duty claim necessarily fails because it is not a fiduciary act to amend or terminate a pension plan. *See, e.g., Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir 2008) (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999)). "[T]he term fiduciary with respect to a plan encompasses 'management' and 'administration' of the plan, but does not include plan design. Thus, when employers undertake actions to adopt, modify or terminate a plan, 'they do not act as fiduciaries but are analogous to the settlors of the trust.'" *Id.* (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996)) (internal citations omitted). Although there is a fiduciary obligation in selecting an appropriate annuity provider, *see Beck v. PACE International Union*, 551 U.S. 96, 101-02 (2007), the decision to amend a plan to purchase an annuity does not implicate a plan fiduciary's duties.

C

Plaintiffs maintain that the annuity contract violates Verizon's duty under ERISA § 404(a)(1)(C) to "diversify[] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C). They contend that the annuity contract is an investment of all the transferred assets in just one entity—Prudential. This argument relies on characterizing the annuity contract as an investment instead of a distribution of benefits. *See generally* 60 Fed. Reg. 12328 (Mar. 6, 1995) (describing annuity contracts as "benefit distribution"). But plaintiffs offer no support for their position that the fiduciary duty to

diversify investments applies in this context. In fact, the fiduciary duty that ERISA-based regulations apply to a plan's purchase of annuities addresses the prudence of the plan's choice of insurance company. *See Beck*, 551 U.S. at 101-02 (citing 29 C.F.R. § 2509.95-1 (2006)). Plaintiffs point to no authority, and the court has found none, that supports treating an annuity purchase as an investment subject to the fiduciary duty to diversify investments.

V

Plaintiffs contend that the annuity contract violates ERISA § 510 by discriminating against the 41,000 retirees whose pensions would be removed from the Plan and transferred to the Prudential annuity contract.

In relevant part, ERISA § 510 makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. To prevail on a § 510 claim, a plaintiff must prove that the defendant had a "specific intent to discriminate among plan beneficiaries on grounds . . . proscribed by section 510." *McGann v. H & H Music Co.*, 946 F.2d 401, 408 (5th Cir. 1991). Prohibited grounds for discrimination include the "specific intent to retaliate for the exercise of an ERISA right, or to prevent attainment of benefits he would become entitled to under the plan." *Chambers v. Joseph T. Ryerson & Son, Inc.*, 2007 WL 1944346, at *12 (N.D. Tex. July 2, 2007) (Fitzwater, J.) (citing *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir.1997) (per curiam)). But "ERISA does not broadly prevent an employer from

'discriminating' in the creation, alteration or termination of employee benefits plans."[11] *McGann*, 946 F.2d at 408 (finding no § 510 violation where plan reduced medical expense limit for just AIDS-related expenses, from $1 million to $5,000). To succeed on a § 510 claim, a plaintiff must show more than that a plan amendment resulted in an identifiable group's being treated differently from another. *See id.* at 406-07.

Plaintiffs maintain that Verizon is discriminating against the 41,000 retirees being removed from the Plan because the annuity contract does not also exclude from the Plan 6,000 other similarly-situated management retirees and at least 50,000 other Plan participants.[12] They contend that Verizon has the specific intent to interfere with their right to continued participation in the Plan. As support for this asserted right to continued plan participation, plaintiffs rely on a clause in the SPD that states: "You are a plan participant as long as you have a vested benefit in the plan that has not been paid to you in full." Ps. App. 19.

Plaintiffs have failed to establish a substantial likelihood that Verizon has a specific intent to interfere with their rights under the Plan and ERISA. They do not offer a rebuttal

---

[11]The Fifth Circuit has reserved deciding whether "the scope of § 510 is limited to acts that affect the employer-employee relationship; in other words, [whether] plan amendments by themselves cannot be actionable under § 510." *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 210 n.5 (5th Cir. 1995). Even if the scope of § 510 extends to plan amendments, *McGann* explains that discriminating among plan beneficiaries "is illegal only if it is motivated by a desire to retaliate against an employee or to deprive an employee of an existing right to which he may become entitled." *McGann*, 946 F.2d at 408.

[12]Plaintiffs do not point to record evidence to support the numbers of participants remaining on the Plan, but Verizon and Prudential do not object to these figures.

to Verizon's proffered legitimate, nondiscriminatory reasons for defining the group of retirees for the annuity contract. *See* Ps. Reply Br. 19-20. Verizon explains that it chose this group of retirees for the annuity contract because, *inter alia*, it simplified the contract to include only retirees with fixed benefit payments who had been receiving such payments since at least January 1, 2010. Limiting the annuity contract to these stable pension obligations also reduced the cost to Verizon by limiting the uncertainty that would arise if the annuity contract included pensions for participants not yet in pay status, or for recent payees who are more likely to challenge the calculation of pension benefits. Verizon's press release states that the annuity contract "is expected to further Verizon's objective of de-risking the pension plan while improving the company's longer term financial profile." Ps. App. 216.

For the court to accept plaintiffs' argument that Verizon's decision is impermissibly discriminatory, it would be necessary to interpret § 510 as prohibiting any change to a plan that disadvantages an identifiable group of plan beneficiaries. The Fifth Circuit has rejected this position. *See McGann*, 946 F.2d at 408 (explaining that discrimination under § 510 "is illegal only if it is motivated by a desire to retaliate against an employee or to deprive an employee of an existing right to which he may become entitled"). Plaintiffs have not established a substantial likelihood of success on the merits of their § 510 claim because they have not demonstrated that Verizon had a specific intent to deprive the 41,000 retirees of a

right under the Plan or ERISA.[13]

VI

Because the parties seeking a preliminary injunction must carry the burden of persuasion on all four factors, and because plaintiffs have failed to carry their burden of showing a substantial likelihood of success on the merits, the court need not address the remaining three factors. *See, e.g., TRAVELHOST, Inc. v. Figg*, 2011 WL 6009096, at *5 (N.D. Tex. Nov. 22, 2011) (Fitzwater, C.J.) (citing *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) (affirming denial of preliminary injunctive relief on ground that movant had failed to show irreparable injury, and pretermitting discussion of other three factors)).

---

[13]Because the court holds there is an insufficient showing of actionable discrimination under § 510, the court need not reach whether plaintiffs have a right to continued participation in the Plan (with which Verizon allegedly interfered). The court notes, however, that the SPD's description of being a plan participant until "vested benefits in the plan" are paid in full does not prevent an amendment that removes a beneficiary from the plan in compliance with ERISA and the plan's provisions. This SPD language instead simply means that while beneficiaries are in the plan, they are participants until their benefits are paid in full. Plaintiffs' reading would conflict with ERISA regulations that state: "An individual is not a participant covered under an employee pension plan" if, for example, the entire benefit rights are fully guaranteed by an insurance company. 29 C.F.R. § 2510.3-3(d)(2)(ii) (2012).

\* \* \*

Accordingly, plaintiffs' motions for a TRO and preliminary injunction are denied.

**SO ORDERED**.

December 7, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE