IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILLIAM LEE, JOANNE                §
MCPARTLIN, and EDWARD PUNDT,        §
Individually, and as Representatives of §
plan participants and plan beneficiaries §
of the VERIZON MANAGEMENT          §
PENSION PLAN,                       §
                                    §
                Plaintiffs,          §
                                    §  Civil Action No. 3:12-CV-4834-D
VS.                                 §
                                    §
VERIZON COMMUNICATIONS INC.,        §
et al.,                             §
                                    §
                Defendants.          §

MEMORANDUM OPINION
AND ORDER

        Defendants move under Fed. R. Civ. P. 12(b)(1) and/or (b)(6) to dismiss this ERISA-

based[1] class action arising from the decision of a pension plan to purchase a single premium

group annuity contract from a third party to settle approximately $7.4 billion of the plan's

pension liabilities to certain plan beneficiaries.  For the reasons that follow, the court grants

defendants' motion but also permits plaintiffs to replead.[2]

I

        This is a certified class action brought by plaintiffs William Lee, Joanne McPartlin,

_____

        [1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

        [2]On April 26, 2013 plaintiffs filed a motion for leave to file amendment to the
operative amended complaint for class action relief under ERISA.  Because the court is
granting plaintiffs leave to amend, their motion is denied without prejudice as moot.

and Edward Pundt (collectively, "plaintiffs" unless the context otherwise requires), individually and as representatives of plan participants and plan beneficiaries of the Verizon Management Pension Plan (the "Plan").  Plaintiffs seek declaratory and injunctive relief against defendants Verizon Communications Inc. ("VCI"), Verizon Corporate Services Group Inc., Verizon Employee Benefits Committee, Verizon Investment Management Corp., and Verizon Management Pension Plan (collectively, "Verizon," unless the context otherwise requires).

In October 2012 VCI entered into a Definitive Purchase Agreement with the Prudential Insurance Company of America ("Prudential")[3] and others,[4] under which the Plan agreed to purchase a single premium group annuity contract from Prudential to settle approximately $7.4 billion of the Plan's pension liabilities.[5]  To accomplish the transaction, Verizon amended the Plan to direct that it purchase one or more annuity contracts according to certain criteria.  Under the amendment, the annuity contract applied to Plan participants who had begun receiving Plan payments before January 1, 2010, and it required that the

---

[3]The parties have stipulated to the dismissal without prejudice of Prudential.

[4]Verizon Investment Management Corp. and Fiduciary Counselors Inc. were also parties to the agreement.

[5]In deciding Verizon's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

annuity provider fully guarantee and pay each pension in the same form as did the Plan. Plaintiffs neither allege nor contend that the annuity transaction will have any effect on the amount of their benefit payments or their right to payments.  Instead, they object in part on the basis that removal from the Plan means they no longer receive ERISA protections and rights and that they have lost the pension protection provided by the Pension Benefit Guaranty Corporation ("PBGC").  The annuity transaction was executed in December 2012, a few days after the court denied plaintiffs' application for a temporary restraining order ("TRO") and preliminary injunction to enjoin Verizon from consummating the transaction. *See Lee v. Verizon Commc'ns Inc.*, 2012 WL 6089041, at *1 (N.D. Tex. Dec. 7, 2012) (Fitzwater, C.J.) ("*Lee I*").[6]

Under the terms of the transaction, Verizon transferred to Prudential Verizon's responsibility to provide pension benefits to approximately 41,000 retirees.  These 41,000 transferred retirees are no longer Plan participants.  The participants and beneficiaries not covered by the transaction—who number approximately 50,000—remain part of the Plan. On the parties' joint motion, the court certified each group as a class, defined as a Transferee Class and a Non-Transferee Class.

The Transferee Class alleges the following three claims: Verizon failed to disclose the possibility of the annuity transaction in the summary plan description ("SPD"), in violation of ERISA § 102(b), 29 U.S.C. § 1022(b); Verizon breached its fiduciary duties under ERISA

---

[6]Because *Lee I* explains much of the law and the relevant Plan terms, the court restates only what is necessary to understand today's memorandum opinion and order.

§ 404(a), 29 U.S.C. § 1104(a); and Verizon discriminated against the members of the Transferee Class, in violation of ERISA § 510, 29 U.S.C. § 1140.  The Non-Transferee Class brings a claim via ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief under ERISA § 409, 29 U.S.C. § 1109.  The Non-Transferee Class alleges that Verizon breached its fiduciary duties and depleted the Plan's assets by paying an excessive and unreasonable amount of expenses to complete the annuity transaction.

Verizon moves to dismiss the Transferee Class's claims under Rule 12(b)(6) and to dismiss the Non-Transferee Class's claim under Rule 12(b)(1) and (b)(6).

## II

To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).  Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain

- 4 -

statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court turns first to Verizon's Rule 12(b)(6) motion to dismiss the Transferee Class's ERISA § 102(b) claim.

The Transferee Class maintains that Verizon violated § 102(b) by not disclosing in the SPD that it retained the right to remove participants from the Plan by transferring the pension obligations to an insurance company. Section 102(b) requires that an SPD contain certain information, including a description of "circumstances which may result in . . . loss of benefits." In denying plaintiffs' application for a TRO and preliminary injunction, the court held in *Lee I* that this claim was not likely to succeed on the merits because plaintiffs had failed to allege or show that the annuity transaction would result in a loss of the amount or right to benefits, and because § 102(b) only requires a description of existing plan terms, not a disclosure of future plan changes, such as the amendment in question that directed the annuity purchase.[7]  *See Lee I*, 2012 WL 6089041, at *2-3.

---

[7] The Transferee Class asserts that, because Verizon maintains that it always had the right to conduct this annuity transaction, this means that this was an existing circumstance that might result in a loss of benefits, and Verizon was therefore obligated to disclose it. The court disagrees. Verizon does not maintain that it could have completed the annuity

The Transferee Class also maintains that § 102(b) requires a description of the circumstances under which a participant may be removed from the Plan.[8] It relies solely on its interpretation of an ERISA regulation that prescribes that an SPD must include "a statement clearly identifying circumstances which may result in . . . loss . . . of any benefits that a participant or beneficiary might otherwise reasonably expect *the plan to provide* on the basis of the description of benefits required by paragraphs (j) and (k) of this section." 29 C.F.R. § 2520.102-3(*l*) (2012) (emphasis added). The Transferee Class interprets this regulation to require that an SPD describe when benefits will not be provided *by the Plan*. The Transferee Class made a similar unavailing argument in *Lee I*—that the Plan's mandate in § 8.5 to use its assets exclusively "to provide benefits *under the Plan*" meant that the Plan itself must continue to provide the benefits. *See Lee I*, 2012 WL 6089041, at *3. The Transferee Class mistakenly interprets the regulation's language "circumstances which may result in . . . loss . . . of any benefits that a participant or beneficiary might otherwise reasonably expect *the plan to provide*," 29 C.F.R. § 2520.102-3(*l*) (emphasis added) to mean that a change in the payer of plan benefits is a circumstance that results in a loss of plan benefits provided by the plan, even if those benefits are provided in full. Instead, the

---

transaction without amending the Plan. And even if Verizon could have done so, and this meant that removal of the Transferee Class from the Plan was an existing circumstance, this argument still fails because the Transferee Class does not allege that the annuity transaction might result in a loss of benefits.

[8]This argument is an iteration of one running throughout the Transferee Class's case—that its members had a right to continued participation in the Plan.

regulation is properly interpreted to mean that an SPD must clearly identify circumstances that might result in an actual loss of benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide.  This understanding is supported by interpreting the words "expect the plan to provide" in the context of the phrase "benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide *on the basis of the description of benefits required by paragraphs (j) and (k) of this section*."  29 C.F.R. § 2520.102-3(*l*) (emphasis added).  Understood in this broader context, it is clear that the regulation is focused on the benefits to be provided under the Plan rather than on the *source* of the benefits *per se* and does not relate to whether the Plan itself must continue to pay the benefits.

Because the Transferee Class has not alleged that the SPD lacked any description that the SPD was required to include, the court dismisses the § 102(b) claim.

IV

The court next considers the Transferee Class's claim, brought under ERISA § 502(a)(3), that Verizon breached its fiduciary duties, in violation of ERISA § 404(a).

A

The Transferee Class contends that Verizon's plan amendment and the resulting annuity transaction are fiduciary functions, and it alleges that Verizon breached its fiduciary duties by violating Plan terms, avoiding ERISA rules that would have applied had the Plan been terminated, and failing to notify Plan participants or beneficiaries or ask for their consent.  The Transferee Class posits that Verizon was not acting in the best interest of the

class members because there is a risk that Prudential will fail, and by removing the class

members from the Plan, they have lost the pension guarantee provided by the PBGC.  The

Transferee Class also maintains that the annuity transaction is not expressly authorized by

any ERISA provision or regulation.

Verizon asserts that amending the Plan and undertaking the annuity transaction are

not fiduciary functions and, therefore, that the Transferee Class does not have a claim under

§ 404(a).  Moreover, Verizon maintains that it did not violate any Plan terms and that ERISA

regulations authorize an annuity purchase in these circumstances.[9]

---

[9]The parties dispute whether ERISA regulations expressly authorize an annuity purchase that removes a group of participants and beneficiaries from a plan without terminating the plan.  The Transferee Class does not point to any regulation that prohibits it, and the court has found none.  But neither does the authority on which Verizon relies expressly authorize an annuity purchase in these circumstances.  Verizon relies on an ERISA regulation and a Department of Labor interpretive bulletin.  The ERISA regulation, 29 C.F.R. § 2510.3-3(d)(2)(ii) (2012), provides that individuals are no longer plan participants if, *inter alia*, their entire benefit rights are fully guaranteed by an insurance company.  The interpretive bulletin states that this regulation recognizes that a plan can transfer pension liabilities by purchasing an annuity from an insurance company, and the bulletin lists circumstances when an annuity purchase might occur:

> Pension plans purchase benefit distribution annuity contracts in a variety of circumstances.  Such annuities may be purchased for participants and beneficiaries in connection with the termination of a plan, or in the case of an ongoing plan, annuities might be purchased for participants who are retiring or separating from service with accrued vested benefits.

Interpretive Bulletins Relating to the Employee Retirement Income Security Act of 1974, 60 Fed. Reg. 12328, 12328 (Mar. 6, 1995).  Although this description of available circumstances does not purport to limit when an annuity purchase can be made, neither does it expressly authorize what Verizon did here.

B

The threshold issue is whether Verizon engaged in fiduciary functions when it amended the Plan and entered into the annuity transaction. If it did not, then Verizon owed no fiduciary duty and the Transferee Class's § 404(a) claim fails as a matter of law. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."); *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 250-51 (5th Cir. 2008). The court has already held in *Lee I* that Verizon did not engage in a fiduciary function when it amended the Plan. *See Lee I*, 2012 WL 6089041, at *4. But the Transferee Class's allegations can also be construed as challenging the *implementation* of the amendment directing the annuity purchase, which can involve fiduciary obligations.

1

"A person is a fiduciary only 'to the extent' he has or exercises specified authority, discretion, or control over a plan or its assets." *Kirschbaum*, 526 F.3d at 251. This is because, as ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary

responsibility in the administration of such plan.

Fiduciary duties thus apply to management of a plan, management or disposition of its assets, and discretionary authority in the administration of a plan.   Excluded from fiduciary responsibility are decisions of a plan sponsor to modify, amend, or terminate a plan. *Kirschbaum*, 526 F.3d at 251; *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443-44 (1999).

> In general, an employer's decision to amend a pension plan concerns the composition or design of the plan itself and does not implicate the employer's fiduciary duties which consist of such actions as the administration of the plan's assets. ERISA's fiduciary duty requirement simply is not implicated [for] a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated.

*Hughes Aircraft*, 525 U.S. at 444-45 (citations omitted) (rejecting three fiduciary duty claims challenging new benefit structure in plan because, "without exception, plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries" (citation and brackets omitted)).

The Transferee Class maintains that Verizon acted in a fiduciary capacity because, by removing approximately $8.4 billion in assets and 41,000 participants and beneficiaries from the Plan, Verizon managed and disposed of plan assets.   According to the Transferee Class, Verizon's exchanging pension plan assets from an ongoing plan for a group annuity contract constitutes a fiduciary function.   Verizon responds that, because plan terminations are not considered fiduciary functions, yet terminations deal with disposing of plan assets, its

decision to undertake the annuity contract was not a fiduciary function.

The Transferee Class is conflating Verizon's amendment of the Plan with its executing of the annuity contract with Prudential. Because amending a plan is not a fiduciary function, Verizon was not acting in a fiduciary capacity when it amended the Plan to direct the purchase of an annuity for participants meeting certain criteria. What may be fiduciary functions, however, are aspects of Verizon's execution of the amendment's directive. For instance, the selection of the annuity provider is a fiduciary function. *Beck v. PACE Int'l Union*, 551 U.S. 96, 102 (2007) (citing 29 C.F.R. §§ 2509.95-1, 4041.28(c)(3) (2006)).

2

The Transferee Class's allegations complain of Verizon's implementation of the amendment directing the annuity purchase. They aver that Verizon's expenses related to the annuity transaction were unreasonable and excessive, in violation of the Plan's exclusive benefit rule. They also criticize Verizon for choosing a single insurer as the annuity provider because Prudential might fail, and they maintain that Verizon's consummating the annuity transaction when the Plan was less than 80% funded harmed the Plan by causing it to fund the entire payment to Prudential.

The Transferee Class alleges that the expenses Verizon paid with Plan assets to complete the annuity transaction were unreasonable and excessive, in violation of § 8.5 of the Plan. Section 8.5 provides, like the exclusive benefit rule in ERISA § 404(a), that Plan assets "shall be used for the exclusive benefit of [participants and beneficiaries] and shall be used to provide benefits under the Plan *and to pay the reasonable expenses of administering*

*the Plan and the Pension Fund*, except to the extent that such expenses are paid by [Verizon]." Ps. App. 25 (emphasis added).   The Transferee Class asserts that it was unreasonable for Verizon to pay Prudential $1 billion more than the value of the transferred pension liabilities, which was approximately $7.4 billion.   It alleges that the additional $1 billion was applied to expenses like commissions and professional fees paid to third parties.[10]

Despite the size of the alleged additional payment, the court cannot reasonably infer from the allegations of the amended complaint that it was unreasonable to pay Prudential approximately $8.4 billion in total.   The Transferee Class does not specify which aspects of the extra $1 billion of expenditures were unreasonable, or how they were unreasonable—e.g., that the legal fees exceeded the reasonable rate for similar work or that any commissions exceeded the market rate.   The transaction involved providing billions of dollars in pension benefits to a large group (41,000) of plan participants and beneficiaries.   Without more than essentially an allegation of the amount that Verizon paid and the conclusory assertion that it was unreasonable, the Transferee Class has failed to state a plausible claim that Verizon violated § 8.5's exclusive benefit rule.[11]

---

[10]The amended complaint is somewhat unclear regarding who received the additional $1 billion from the Plan.   The Transferee Class alleges that Prudential was paid the additional $1 billion, but it also states that the payment was applied to pay consultants and legal fees generated by third parties.   Therefore, it is unclear whether the sum of $1 billion includes all third-party costs related to the annuity transaction or only the payment to Prudential.   This is relevant in determining whether Verizon's expenses were reasonable.

[11]It is unclear what equitable relief the Transferee Class seeks for the alleged violation of § 8.5 of the Plan.   If the Transferee Class seeks restitution from Verizon to be recovered by the Plan, the Transferee Class may lack standing to bring this claim.   *See infra* § VI(C).

The Transferee Class also criticizes Verizon's selection of Prudential as "the *lone* insurer to issue an annuity," on the basis that Prudential may fail.  Am. Compl. ¶ 105.  The amended complaint also refers to a rating agency's cautionary analysis of the effect of the annuity transaction on Prudential.  *See id.* at ¶ 106.  The court does not construe these criticisms as allegations that Verizon breached its fiduciary duty by choosing only Prudential to fund the annuity, because the Transferee Class does not allege this specifically or assert that Verizon should have selected another entity or multiple entities to provide the annuity benefits.

The Transferee Class also alleges that Verizon harmed the Plan by consummating the annuity transaction while the Plan was less than 80% funded, which it alleges violated ERISA § 206(g)(3)(C), 29 U.S.C. § 1056(g)(3)(C), and Internal Revenue Code § 436(d)(3), 26 U.S.C. § 436(d)(3), and thus caused the Plan to pay the entire $8.4 billion to Prudential. The Transferee Class does not explain how the Plan's funding level affected the amount the Plan needed to pay Prudential, and therefore has not stated a plausible claim that Verizon harmed the Plan or breached a fiduciary duty on this basis.

Because Verizon's amending the Plan is not a fiduciary function, and the Transferee Class's allegations concerning Verizon's implementing the annuity transaction fail to state a claim on which relief can be granted, the court dismisses the § 404(a) claim.

V

The Transferee Class's final claim is that Verizon discriminated against the members of the class, in violation of ERISA § 510, by removing them from the Plan while other

retirees were allowed to remain.

In relevant part, § 510 makes it unlawful "for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act." 29 U.S.C. § 1140. "To prevail on a § 510 claim, a plaintiff must prove that the defendant had a 'specific intent to discriminate among plan beneficiaries on grounds . . . proscribed by section 510.'" *Lee I*, 2012 WL 6089041, at *5 (quoting *McGann v. H & H Music Co.*, 946 F.2d 401, 408 (5th Cir. 1991)).  Prohibited grounds for discrimination include the "specific intent to retaliate for the exercise of an ERISA right, or to prevent attainment of benefits he would become entitled to under the plan." *Chambers v. Joseph T. Ryerson & Son, Inc.*, 2007 WL 1944346, at *12 (N.D. Tex. July 2, 2007) (Fitzwater, J.) (citing *Stafford v. True Temper Sports*, 123 F.3d 291, 295 (5th Cir.1997) (per curiam)).

In *Lee I* the court held that plaintiffs failed to demonstrate a substantial likelihood of success on the merits of this claim because they failed to show that Verizon had a specific intent to interfere with their rights under the Plan and ERISA, or to rebut Verizon's proffered legitimate, nondiscriminatory reason for defining the group of retirees for the annuity contract as it did.  *See Lee I*, 2012 WL 6089041, at *5-6.  The amended complaint alleges that Verizon had the specific intent to discriminate against the Transferee Class and expel them from the Plan in order to interfere with their rights under the terms of the Plan and ERISA.  The only right the Transferee Class asserts, however, is a right to continued

- 14 -

participation in the Plan, which it maintains lasts until the members' vested pension benefits are paid in full. The Transferee Class alleges that Verizon was motivated by a desire to deprive the class members of the right to continued participation. The Transferee Class also asserts that Verizon had no legitimate business justification for removing the class members from the Plan, but giving preferential treatment to other groups of retirees who were allowed to remain.

Because a § 510 claim addresses discrimination for the purpose of interfering with the attainment of a right, the court addresses whether the members of the Transferee Class had a right to continued participation in the Plan. In support of this asserted right, the Transferee Class relies on a clause in the SPD that states:

> When participation ends
> You are a plan participant as long as you have a vested benefit in the plan that has not been paid to you in full.

Ps. App. 19 (bold font omitted). As the court noted in *Lee I*,

> the SPD's description of being a plan participant until "vested benefits in the plan" are paid in full does not prevent an amendment that removes a beneficiary from the plan in compliance with ERISA and the plan's provisions. This SPD language instead simply means that while beneficiaries are in the plan, they are participants until their benefits are paid in full. Plaintiffs' reading would conflict with ERISA regulations that state: "An individual is not a participant covered under an employee pension plan" if, *for example*, the entire benefit rights are fully guaranteed by an insurance company. 29 C.F.R. § 2510.3-3(d)(2)(ii) (2012).

*Lee I*, 2012 WL 6089041, at *6 n.13. The Transferee Class offers no additional authority supporting a right to continued participation in the Plan. Because the Transferee Class has

failed to allege a viable right with which Verizon interfered, it has failed to state a claim on which relief can be granted.[12]

## VI

The court now turns to Verizon's Rule 12(b)(1) and (b)(6) motions to dismiss the Non-Transferee Class's claim via ERISA § 502(a)(2), for relief under ERISA § 409(a), alleging that Verizon breached its fiduciary duty by depleting the Plan's assets.

## A

Section 409(a) imposes personal liability on fiduciaries to restore any loss to a plan resulting from a breach of "any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter." The Non-Transferee Class alleges that Verizon breached its fiduciary duties and depleted the Plan's assets by paying an excessive and unreasonable amount of expenses to complete the annuity transaction. They also allege that Verizon executed the annuity transaction when the Plan was less than 80% funded, in violation of ERISA § 206 and Internal Revenue Code § 436, which purportedly required the Plan to fund

_____

[12]Because the court is dismissing the Transferee Class's claim on other grounds, it need not decide a question that the Fifth Circuit has not yet resolved: whether "the scope of § 510 is limited to acts that affect the employer-employee relationship; in other words, [whether] plan amendments by themselves cannot be actionable under § 510." *Hines v. Mass. Mut. Life Ins. Co.*, 43 F.3d 207, 210 n.5 (5th Cir. 1995). The court also need not reach whether § 510 claims are limited to interference with the *attainment* of a right, as opposed to interference with an existing, vested right. *See generally Inter-Modal Rail Emps. Ass'n v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 516-17 (1997) (recognizing issue but reserving decision because not properly presented); *see also* 29 U.S.C. § 1140 (making it unlawful to discriminate "for the purpose of interfering with the *attainment* of any right to which such participant *may become entitled*" (emphasis added)).

- 16 -

the entire payment to Prudential.  Verizon maintains that the Non-Transferee Class lacks constitutional standing to assert a fiduciary duty claim because it has failed to allege an injury in fact.  Verizon posits that, in this context, alleging loss to Plan assets is insufficient because the purported misconduct must affect the payment of pension benefits.  The Non-Transferee Class responds that it has standing because it alleges that the mismanagement of assets caused losses to the Plan and abridged the class members' statutory right to proper management of Plan assets.

B

Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss.  *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *1 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).  A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See id.* at *2 (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* at *2 (internal citation omitted) (citing *Paterson*, 644 F.2d at 523).  If, however, a party mounts a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony,

- 17 -

> the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981)) (internal quotation marks omitted). The plaintiff in a factual challenge, as the party seeking to invoke jurisdiction, must prove subject matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Paterson*, 644 F.2d at 523). While normally a court can decide a factual challenge at the preliminary stage of a Rule 12(b)(1) motion, if the factual findings regarding subject matter jurisdiction are intertwined with the merits of a claim, the court must "assume jurisdiction and decide the case on the merits." *Worldwide Parking, Inc. v. New Orleans City*, 123 Fed. Appx. 606, 609 (5th Cir. 2005) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)); *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741-42 (5th Cir. 1986). In that situation, the defendant can proceed either by moving to dismiss under Rule 12(b)(6) or by moving for summary judgment. *See Worldwide Parking*, 123 Fed. Appx. at 609 & n.4 (citing *Williamson*, 645 F.2d at 415-16). This rule provides protection to plaintiffs so that factual disputes affecting the merits of claims can be addressed in accordance with the Federal Rules and the Seventh Amendment right to a jury trial.

Verizon challenges subject matter jurisdiction on the ground that the Non-Transferee Class lacks constitutional standing. Standing is an "irreducible constitutional minimum" under Article III's case-or-controversy requirement, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and it requires an injury that is "concrete, particularized, and actual or

imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1147 (2013) (citation omitted). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

C

As a threshold matter, the parties dispute what constitutes an injury in fact.  The Non-Transferee Class maintains that it need only allege injury to the Plan to satisfy standing, and it posits that ERISA creates a legal right to a properly-managed plan and a corresponding cognizable injury for breach of a fiduciary's management duties.  Verizon contends that the Non-Transferee Class must allege that the breach of fiduciary duty injured its members personally by affecting their pension payments.

1

Courts have consistently held that a loss that merely affects plan assets is insufficient to confer standing under § 409.  *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013); *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 906 (8th Cir. 2002); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1126-27 (9th Cir. 2006); *Perelman v. Perelman*, ___ F.Supp.2d ___, 2013 WL 271817, at *4-5 (E.D. Pa. Jan. 24, 2013); *see also Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608-09 (6th Cir. 2007) (applying rule in context of welfare benefit plan).  For defined benefit plans such as the Plan, a decrease in the value of plan assets does not necessarily result in an injury in fact because the benefit amount is fixed regardless of the value of assets in the Plan.  "[T]he

- 19 -

employer typically bears the entire investment risk and—short of the consequences of plan termination—must cover any underfunding as the result of a shortfall that may occur from the plan's investments." *Hughes Aircraft*, 525 U.S. at 439. Therefore, a decrease in the amount of plan assets "will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008). *LaRue* distinguished defined *contribution* plans from defined *benefit* plans, reasoning that, in defined *contribution* plans, "fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id.* at 255-56. For defined *benefit* plans, however, it takes more than a plan's becoming underfunded to affect benefits payments. If the fiduciary's conduct results in the plan's becoming underfunded, the plan sponsor is required to make additional contributions. *See David*, 704 F.3d at 338; *see also* 26 U.S.C. § 412(a)(2)(A) (describing employer contributions necessary to reach minimum funding standard). And then, even if the plan sponsor is unable to contribute and the plan becomes unable to pay benefits, participants' vested benefits are guaranteed by the PBGC up to a statutory level. *See David*, 704 F.3d at 338; *see also* 29 U.S.C. § 1322 (describing PBGC's guarantee of benefits payments). Accordingly, for the Non-Transferee Class to establish a particularized, concrete, and actual or imminent injury, it must show more than the mere loss of Plan assets. It must show an effect on its members' benefits payments. *See Perelman*, 2013 WL 271817, at *4 (holding that "plan participants cannot establish standing to seek money damages where the plan has substantial surplus assets or the plan sponsor is

financially capable of making up any losses suffered by the plan" (citing *Harley*, 284 F.3d at 906)).

The Non-Transferee Class alleges that Verizon caused losses to the Plan by violating the restriction on accelerated benefit distributions when a plan is less than 80% funded, which purportedly caused the Plan to fund the entire $8.4 billion payment to Prudential, and by using Plan assets to pay the $1 billion in expenses for the annuity transaction, in violation of the exclusive benefit rule.  The Non-Transferee Class also asserts that Verizon left the Plan in a less stable financial condition, in violation of its fiduciary duties concerning investing Plan assets.  It avers that this conduct harms the Plan, leaves it underfunded and insufficient to support all of the expected payments to the Non-Transferee Class, and thus jeopardizes the financial security of the pension benefits of the class members.

The parties dispute whether the Plan was in fact underfunded and whether Verizon violated the Internal Revenue Code or the exclusive benefit rule in entering into the annuity transaction.  The court need not address these arguments or the supporting evidence.  This is because, assuming *arguendo* that these alleged violations breached Verizon's fiduciary duties and caused loss to the Plan, the Non-Transferee Class has failed to allege that its members have not received the plan benefits to which they are entitled, or, for example, that Verizon as plan sponsor cannot make the necessary contributions to the Plan so that reductions are avoided.  Because the Non-Transferee Class has failed to allege such facts, the amended complaint is insufficient to establish the injury in fact necessary for Article III

standing. *See Perelman*, 2013 WL 271817, at *5.[13]

2

The court next addresses the Non-Transferee Class's assertion that it has standing through the invasion of a statutorily-created right. It maintains that ERISA grants participants a legal right to have plan assets managed solely in their interest, and that breach of that fiduciary duty constitutes an injury in fact. The court disagrees.

The Non-Transferee Class relies on the principle that "the injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Lujan*, 504 U.S. at 578 (alterations, citation, and internal quotation marks removed). As *Lujan* explained, this principle is generally applied to a *de facto* injury that was inadequate in law before a statute made it legally cognizable. *See id.* (noting examples such as injury to individual's personal interest in living in racially-integrated community). The Non-Transferee Class does not rest its purported statutorily-grounded injury on a *de facto* injury of any kind; it maintains that breach of fiduciary duty in itself is an injury in fact. This argument fails because "it conflates statutory standing with constitutional standing." *David*, 704 F.3d at 338 (rejecting assertion that alleged deprivation of statutory right to have

---

[13]*Perelman* addressed similar allegations and held that they were insufficient to establish standing. *Perelman*, 2013 WL 271817, at *5. The plan participants alleged that diminution of plan assets jeopardized the plan's ability to provide pension benefits, and that the funding level had dropped below 100%. *See id.* Although in *Perelman* there was no allegation that the losses put the plan in "at-risk status" under the statute, which is contested here, the court concluded that it was more important that the complaint did not allege that the plan sponsor "is financially compromised and thus unable to adequately fund the Plan so that it may meet its future obligations to pay all vested benefits." *Id.*

plan operated in accordance with ERISA's fiduciary requirements constituted injury in fact necessary for constitutional standing).  The Non-Transferee Class fails to cite any authority holding that there is constitutional standing for plan participants to sue under ERISA § 409 for a breach of fiduciary duty that causes them no harm.[14]  *Cf. Lujan*, 504 U.S. at 578 (noting that while statutes may broaden categories of injury that can be alleged in support of standing, that is different than holding that Congress may abandon requirement that plaintiffs must themselves have suffered an injury).  The court therefore holds that the Non-Transferee Class lacks constitutional standing to seek relief under § 409 on this basis, and it dismisses the action of the Non-Transferee Class.

## VII

Although the court is granting Verizon's motions, it will grant the Transferee Class and the Non-Transferee Class leave to replead.  "[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (quoting *Great Plains*

---

[14]The Non-Transferee Class does cite cases regarding the *per se* ERISA violations listed in § 406, 29 U.S.C. § 1106.  But these cases do not stand for the proposition that participants can sue for § 409 relief without showing particularized injury to themselves.  Courts addressing § 406 claims still assess whether plaintiffs have constitutional standing.  *See, e.g., Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 102-03 (2d Cir. 2011) (holding that plan beneficiaries had constitutional standing to bring § 406 claim for injunctive relief, although not for disgorgement or restitution (which require particularized injury), where beneficiaries could not show individual harm because they received entire amount of promised benefits).

*Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  The

Transferee Class and the Non-Transferee Class have not stated that they cannot, or are

unwilling to, cure the defects that the court has identified.  The court will therefore grant

them 30 days from the date this memorandum opinion and order is filed to file a second

amended complaint.  If they replead, Verizon may move anew to dismiss, if it has a basis to

do so.

\* \* \*

Accordingly, defendants' motion to dismiss is granted, and the Transferee Class and

the Non-Transferee Class are granted leave to replead.

**SO ORDERED**.

June 24, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 24 -