IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

WILLIAM LEE, JOANNE                      §
MCPARTLIN, and EDWARD PUNDT,             §
Individually, and as Representatives of  §
plan participants and plan beneficiaries §
of the VERIZON MANAGEMENT               §
PENSION PLAN,                           §
                                        §
                        Plaintiffs,     §
                                        § Civil Action No. 3:12-CV-4834-D
VS.                                     §
                                        §
VERIZON COMMUNICATIONS INC.,            §
et al.,                                 §
                                        §
                        Defendants.     §

MEMORANDUM OPINION
AND ORDER

In *Lee v. Verizon Communications Inc.*, 954 F.Supp.2d 486 (N.D. Tex. 2013)

(Fitzwater, C.J.) ("*Lee II*"), the court granted defendants' motion to dismiss under Fed. R.

Civ. P. 12(b)(1) and (b)(6), dismissed plaintiffs' ERISA-based[1] class action arising from a

pension plan's decision to purchase a single premium group annuity contract to settle

approximately $7.4 billion of the plan's pension liabilities, and granted plaintiffs leave to

replead.  Plaintiffs amended their complaint, and defendants move anew to dismiss under

Rules 12(b)(1) and (b)(6).  Concluding that plaintiffs have failed to cure the pleading

deficiencies identified in *Lee II*, the court grants defendants' motion and dismisses this

action.

---

[1]The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

I

The relevant background facts and procedural history are set out in *Lee II* and need not be repeated at length. *See id.* at 488-89. The court will limit its discussion to what is necessary to understand today's decision.

This is a certified class action brought by plaintiffs William Lee, Joanne McPartlin, and Edward Pundt, individually and as representatives of plan participants and plan beneficiaries of the Verizon Management Pension Plan (the "Plan"). They seek relief against defendants Verizon Communications Inc. ("VCI"), Verizon Corporate Services Group Inc., Verizon Employee Benefits Committee ("VEBC"), Verizon Investment Management Corp. ("VIMCO"), and Verizon Management Pension Plan (collectively, "Verizon," unless the context otherwise requires). In October 2012, VCI entered into a Definitive Purchase Agreement with the Prudential Insurance Company of America ("Prudential"), VIMCO, and Fiduciary Counselors Inc. ("FCI"), under which the Plan agreed to purchase a single premium group annuity contract from Prudential to settle approximately $7.4 billion of the Plan's pension liabilities.[2] Verizon amended the Plan to direct that it purchase one or more annuity contracts according to certain criteria. Under the amendment, the annuity contract

---

[2]In deciding Verizon's Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to plaintiffs, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in plaintiffs' favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

applied to Plan participants who had begun receiving Plan payments before January 1, 2010, and it required that the annuity provider fully guarantee and pay each pension in the same form as did the Plan.  The annuity transaction was executed in December 2012.

Under the terms of the transaction, Verizon transferred to Prudential Verizon's responsibility to provide pension benefits to approximately 41,000 retirees.  These transferred retirees (the "Transferee Class") are no longer Plan participants.  The participants and beneficiaries not covered by the transaction ("Non-Transferee Class")—who number approximately 50,000—remain part of the Plan.

The Transferee Class alleges three claims: Verizon failed to disclose the possibility of the annuity transaction in the summary plan description, in violation of ERISA § 102(b), 29 U.S.C. § 1022(b); Verizon breached its fiduciary duties under ERISA § 404(a), 29 U.S.C. § 1104(a); and Verizon discriminated against the members of the Transferee Class, in violation of ERISA § 510, 29 U.S.C. § 1140.  The Non-Transferee Class brings a claim via ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), for relief under ERISA § 409, 29 U.S.C. § 1109. It alleges that Verizon breached its fiduciary duties and depleted the Plan's assets by paying an excessive and unreasonable amount of expenses to complete the annuity transaction.

In *Lee II* the court dismissed the claims of the Transferee Class under Rule 12(b)(6) for failure to state a claim on which relief could be granted.  *Lee II*, 954 F.Supp.2d at 490-95. The court dismissed the claim of the Non-Transferee Class under Rule 12(b)(1) for lack of constitutional standing.  *Id.* at 496-99.  It also granted plaintiffs leave to replead.  *Id.* at 499-500.

In their second amended complaint for declaratory and injunctive relief under ERISA ("SAC"), plaintiffs identify the paragraphs of the SAC that they maintain address the pleading issues addressed in *Lee II*.  *See* SAC at 4 n.3 ("Plaintiffs point out, as a courtesy and for the convenience of the Court and counsel for Defendants that the following paragraphs in this Second Amended Complaint address the pleading issues with respect to the Amended Complaint that were noted in the Court's Memorandum Opinion and Order…: 45, 46, 50-52, 59-60, 68-69, 73, 76-77, 79, 91, 108-115, 117, 120-124, 132-133, 137 and Prayer, paragraphs B.8 and B.9." (bold font omitted)).   Defendants move anew to dismiss, contending that plaintiffs lack standing to assert claims on behalf of the Non-Transferee Class and that plaintiffs have failed to state claims on behalf of the Transferee Class on which relief can be granted.   They maintain that the SAC "does not cure any of the pleading defects that were fatal to the prior complaint.  Rather, it merely makes minor tweaks to the prior complaint." Ds. Br. 1.  Defendants also assert that "[m]any of Plaintiffs' new allegations, moreover, are either entirely irrelevant or wholly conclusory, and none provides a basis to alter the Court's prior conclusion that Plaintiffs' claims fail as a matter of law."  *Id.*  Plaintiffs oppose the motion.  The court has heard oral argument.

## II

The changes that plaintiffs have made in the SAC to the first and third claims of the Transferee Class (first and third claims for relief), the claim of the Non-Transferee Class (fourth claim for relief), and the prayer for relief do not alter the reasoning or result of *Lee II*.  And the arguments on which plaintiffs rely in opposition to defendants' motion to dismiss

these claims are essentially those that the court declined to accept in *Lee II*. Accordingly, for the reasons explained in *Lee II*, and in the absence of material changes between the amended complaint and the SAC, the court grants defendants' motion to dismiss the first and third claims for relief under Rule 12(b)(6) for failure to state a claim on which relief can be granted, and it grants their motion to dismiss the fourth claim for relief under Rule 12(b)(1) for lack of constitutional standing.

### III

The SAC makes more extensive changes to plaintiffs' second claim for relief: a claim by the Transferee Class under ERISA § 502(a)(3) that VEBC and VIMCO are liable for breach of fiduciary duty, in violation of ERISA § 404(a). But the court concludes that plaintiffs have still failed to state a claim on which relief can be granted, and that this claim must be dismissed under Rule 12(b)(6).

### A

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of plaintiffs' [SAC] by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendants' motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer possibility that a defendant has
acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at
555 ("Factual allegations must be enough to raise a right to relief above the speculative
level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the
pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration
omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  *Id.* at 678.

B

    In plaintiffs' amended complaint, which the court evaluated in *Lee II*, they alleged that
Verizon breached its fiduciary duties by violating Plan terms, avoiding ERISA rules that
would have applied had the Plan been terminated, and failing to notify Plan participants or
beneficiaries or to ask for their consent before amending the Plan.  Plaintiffs asserted that
Verizon was not acting in the best interests of the Transferee Class members because there
was a risk that Prudential would fail, and by removing the class members from the Plan, they
caused them to lose the pension guarantee provided by the Pension Benefit Guaranty
Corporation ("PBGC").  Plaintiffs also alleged that the annuity transaction was not expressly
authorized by any ERISA provision or regulation.  *Lee II*, 954 F.Supp.2d at 491.

    In *Lee II* the court distinguished Verizon's role as settlor (when it amended the Plan

to direct the purchase of one or more annuities for participants meeting certain criteria) and its role as fiduciary (when it managed the Plan, managed or disposed of Plan assets, or exercised discretionary authority in the administration of the Plan). *Id.* at 492-93. The court held that "Verizon was not acting in a fiduciary capacity when it amended the Plan to direct the purchase of an annuity for participants meeting certain criteria." *Id.* at 493.

The court then turned to plaintiffs' allegations that Verizon violated its fiduciary obligations to the Transferee Class. Concerning the assertion that it was unreasonable for Verizon to pay from Plan assets $1 billion more than the value of the transferred pension liabilities for expenses like commissions and third-party professional fees, the court held that, despite the size of the payment, it could not reasonably infer from the allegations of the amended complaint that it was unreasonable to pay Prudential approximately $8.4 billion in total. *Id.* at 493-94. Plaintiffs did not specify which aspects of the extra $1 billion of expenditures were unreasonable, or how they were unreasonable. *Id.* at 494. The transaction involved providing billions of dollars in pension benefits to a large group (41,000) of plan participants and beneficiaries. "Without more than essentially an allegation of the amount that Verizon paid and the conclusory assertion that it was unreasonable, the Transferee Class has failed to state a plausible claim that Verizon violated § 8.5's exclusive benefit rule." *Id.*

As for plaintiffs' claim that Verizon had selected Prudential as "the *lone* insurer to issue an annuity" and that Prudential might fail, and the reference in the amended complaint to a rating agency's cautionary analysis of the effect of the annuity transaction on Prudential, "[t]he court [did] not construe these criticisms as allegations that Verizon breached its

fiduciary duty by choosing only Prudential to fund the annuity, because the Transferee Class [did] not allege this specifically or assert that Verizon should have selected another entity or multiple entities to provide the annuity benefits." *Id.*

Finally, with respect to plaintiffs' claim that Verizon harmed the Plan by consummating the annuity transaction while the Plan was less than 80% funded, the court concluded that plaintiffs "[did] not explain how the Plan's funding level affected the amount the Plan needed to pay Prudential, and therefore ha[d] not stated a plausible claim that Verizon harmed the Plan or breached a fiduciary duty on this basis." *Id.*

C

Although the SAC expands somewhat on certain allegations that the court deemed insufficient in *Lee II*, it still fails to plead a plausible claim for breach of fiduciary duty.

Aside from the paragraphs in the SAC that are asserted in support of the second claim for relief and contain essentially editorial changes,[3] the new allegations are found in ¶¶ 91, 108, 109, 110, 111, 112, 113, 114, 115, and 117 of the SAC. Paragraph 91 largely quotes a provision of ERISA, 29 U.S.C. § 1002(21)(A), that defines when someone is a plan fiduciary. Paragraph 117 essentially expands plaintiffs' request for relief.[4] This leaves

---

[3]*See* SAC ¶¶ 93, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, and 107.

[4]As amended, ¶ 117 states:

> Pursuant to ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs ask this Court to grant appropriate class-wide equitable relief, including a declaration that the Verizon EBC and VIMCO each failed to meet and breached statutory

¶¶ 108-15, which allege as follows:

108.   In June 2013, a federal regulatory agency, the U.S. Treasury's Financial Stability Oversight Council ("FSOC"), decided to designate Prudential as a "systemically important financial institution" because Prudential could trigger massive financial havoc to the whole nation, should Prudential's economic fortunes change.  Prudential has decided and will challenge that designation because Prudential does not want *any* federal oversight put in place. Prudential's position to challenge FSOC's planned designation of Prudential is consistent with Prudential's complicity with VIMCO's and Plan fiduciaries' decision that the Transferee Class lose all ERISA federal protections and the PBGC uniform guarantee under the terms of the single group annuity provided by Prudential outside the Plan. Prudential has not and will not act in the best interest of the Transferee Class, 41,000 persons whom were unknowingly sent into the sole care of Prudential.

109.  When implementing the Plan sponsor's decision directing the Plan to purchase one or more annuities from one or more insurance companies, the Verizon Defendants had a fiduciary

---

fiduciary duties under ERISA Section 404(a)(1), 29 U.S.C. § 1104(a)(1) and the terms of the Plan, by, among other conduct as alleged herein, not maintaining the purchased Prudential annuity as an asset in the ongoing Plan and, thus, preserving the Transferee Class's ERISA protections and the uniform guarantee provided by the PBGC. Pursuant to ERISA Section 502(a)(9), 29 U.S.C. § 1132(a)(9), Plaintiffs ask this Court to grant appropriate class-wide relief, requiring the purchased annuity to be maintained under the Plan so as to restore the Transferee Class's panoply of ERISA protections and the uniform PBGC guarantee and better assure receipt by the Transferee Class of the amounts provided or to be provided by the Prudential annuity. Plaintiffs request the Court grant Plaintiffs and Transferee Class members temporary, preliminary and permanent injunctive and other appropriate equitable relief.

*Id.* ¶ 117.

obligation to do what was in the best interests of all Plan participants. VIMCO and the Plan fiduciaries breached fiduciary duties by imprudently selecting a single group annuity provider, thus placing everyone in jeopardy of losing retirement benefits based upon the fortunes of a single insurer.  It would have been best, more prudent, not to put all of the Plan's eggs in one basket but to contract with several or more insurance providers.  The Transferee Class should have been allowed a choice in the matter.

110.  Ironically, on the very same date the Plan was amended by the Plan sponsor – October 17, 2012 – directing VIMCO to select one or more insurance annuity providers, VIMCO and the Plan fiduciaries selected a single insurer, Prudential, for the massive annuity transaction. Self evidently, VIMCO and Plan fiduciaries did not prudently allow any period of time, much less a reasonable time period for consideration of whether to choose one or more annuity providers.   The amendment directing VIMCO in that regard was a ruse, as it was predetermined that Prudential would be the only provider.   VIMCO's implementation of the amendment was, therefore, a breach of fiduciary duty.  Also, VIMCO and Plan fiduciaries breached their fiduciary duties by not adequately considering the wishes of any of the Transferee Class members. Indeed, no retiree was ever consulted about his or her wishes with respect to the annuity transaction.

111.  The Plan amendment instructing VIMCO to purchase one or more annuities did not mandate that the purchase be made outside of the Plan. (App. 60-62).  The Plan amendment did not expressly prohibit VIMCO from purchasing one or more annuities and maintaining that purchase as an asset of the Plan as part of the ongoing Plan's portfolio of assets.

112.  VIMCO should have exercised its discretion in favor of the best interests of the Transferee Class when VIMCO was determining the terms of the purchased annuity, and VIMCO and Plan fiduciaries should have required the purchased annuity be maintained as an asset of the Plan, perhaps, designated as an asset to be used solely to fund the retirement payment obligations for the Transferee Class.

- 10 -

113.   VIMCO and the Plan fiduciaries should have acted prudently and insured that all retirees maintained ERISA's federal protections and the uniform guarantee provided by the PBGC.   That would have been possible if the annuity was purchased and maintained as an asset in the ongoing Plan so that all retirees continued to enjoy ERISA's federal protections and the PBGC uniform financial guarantee.

114.   Prior to the Verizon/Prudential annuity transaction, Section 8.5 of the Plan required that Plan assets be used for the "exclusive benefit" of participants to "provide benefits under the terms of the Plan" and pay "reasonable expenses" of administering the Plan.  (App. 25).  However, almost $1 billion more than necessary to cover the transferred liabilities was paid to Prudential by the Plan for amounts other than benefits and reasonable expenses of administering the Plan.  The extra $1 billion payment was applied towards expenses, <u>not for administering the ongoing Plan</u>, but to enable avoidance of payment of such expenses by the Plan sponsor, Verizon Communications Inc. and corporate subsidiaries, thus violating Section 8.5 and the terms of the Master Trust.

115.   The extra $1 billion payment was used to pay Verizon's-the settlor's obligations for third-party costs related to the annuity transaction, including fees paid to outside lawyers, accountants, actuaries, financial consultants and brokers.  Those expenses and fees should have been charged to Verizon's corporate operating revenues, not charged to the Plan and MasterTrust.

SAC ¶¶ 108-15 (bold font omitted).

Interpreted under the Rule 12(b)(6) standard, *see supra* § III(A), ¶¶ 108-15 allege the following four grounds for plaintiffs' breach of fiduciary duty claim: (1) VIMCO and the Plan fiduciaries breached their fiduciary duties by imprudently selecting a single group annuity provider, without prudently allowing any period of time, much less a reasonable period of time, to consider whether to choose one or more annuity providers (¶¶ 108-110);

(2) VIMCO and the Plan fiduciaries did not adequately consider the wishes of any Transferee Class members, because no class members were consulted concerning the annuity transaction (¶110); (3) VIMCO and the Plan fiduciaries should have required the annuity to be maintained as an asset of the Plan, perhaps designated as an asset to be used solely to fund the retirement payment obligations of the Transferee Class, which would have ensured that all retirees retained the protections of ERISA and the PBGC (¶¶ 111-113); and (4) Verizon violated § 8.5 of the Plan, which requires that Plan assets be used for the exclusive benefit of Plan participants and to provide benefits under the terms of the Plan and pay reasonable expenses of administering the Plan, because almost $1 billion more than was necessary to cover transferred liabilities was paid to Prudential for expenses (including for outside lawyers, accountants, actuaries, financial consultants, and brokers), not for benefits and reasonable expenses of administering the Plan, in order for VCI and its corporate subsidiaries to avoid paying these expenses from corporate operating revenues (¶¶ 114-115).

D

Two of the grounds for plaintiffs' breach of fiduciary duty claim fail because the disputed decisions involve Verizon's role as settlor, not Plan fiduciary. As the court explained in *Lee II*, "[b]ecause amending a plan is not a fiduciary function, Verizon was not acting in a fiduciary capacity when it amended the Plan to direct the purchase of an annuity for participants meeting certain criteria." *Lee II*, 954 F.Supp.2d at 493. Plaintiffs' complaints that the wishes of the Transferee Class were not considered, and that the annuity was not purchased and retained as part of the Plan, pertain to Verizon's decisions as settlor,

- 12 -

not as plan fiduciary.  *See id.*  These two grounds of plaintiffs' breach of fiduciary duty claim therefore fail to state a claim on which relief can be granted.

E

As in their amended complaint, plaintiffs again base their breach of fiduciary duty claim on the expenditure of almost $1 billion from Plan assets for expenses.  In *Lee II* the court explained why this ground of their claim failed to state a plausible claim: despite the size of the payment, the court could not reasonably infer from the amended complaint that it was unreasonable to pay Prudential approximately $8.4 billion in total, *id.* at 493-94; the Transferee Class did not specify which aspects of the extra $1 billion of expenditures were unreasonable, or how they were unreasonable, *id.* at 494; the transaction involved providing billions of dollars in pension benefits to a large group (41,000) of plan participants and beneficiaries, *id.*; and "[w]ithout more than essentially an allegation of the amount that Verizon paid and the conclusory assertion that it was unreasonable, the Transferee Class ha[d] failed to state a plausible claim that Verizon violated § 8.5's exclusive benefit rule," *id.*

The SAC does not cure these deficiencies.  And in their response brief to defendants' motion to dismiss, plaintiffs do not even attempt to defend their breach of fiduciary duty claim on this basis.  *See* Ps. Br. 5-16.  The court therefore concludes that this ground of plaintiffs' breach of fiduciary duty claim fails to state a claim on which relief can be granted.

F

Plaintiffs' remaining ground is their claim that defendants breached their fiduciary duty by selecting a single group annuity provider, without allowing any period of time, much less a reasonable period of time, to consider whether to choose one or more providers.

Such a claim is legally available.

> The relevant inquiry in any case is whether the fiduciary, in structuring and conducting a thorough and impartial investigation of annuity providers, carefully considered [the factors found in Department of Labor Interpretative Bulletin 95-1] and any others relevant under the particular circumstances it faced at the time of decision.

*Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 300 (5th Cir. 2000). "If so, a fiduciary satisfies ERISA's obligations if, based upon what it learns in its investigation, it selects an annuity provider it 'reasonably conclude[s] best to promote the interests of [the plan's] participants and beneficiaries.'" *Id.* (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982) (second alteration in original)). "If not, ERISA's obligations are nonetheless satisfied if the provider selected would have been chosen had the fiduciary conducted a proper investigation." *Id.* (citing *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 153-54 (3d Cir. 1999)).

Plaintiffs do little to defend this claim in their response brief, essentially parroting the SAC and combining it with their contention that the Transferee Class members should have been consulted:

> VIMCO and the Plan fiduciaries breached fiduciary duties by
> imprudently selecting a single group annuity provider, thus
> placing everyone in jeopardy of losing retirement benefits based
> upon the fortunes of a single insurer.  It would have been best,
> more prudent, not to put all of the Plan's eggs in one basket but
> to contract with several or more insurance providers.  The
> Transferee Class should have been allowed a choice in the
> matter.  Different carriers necessarily afford different degrees of
> security.  A prudent fiduciary would seek the retirees' consent
> and give them a voice and choice in the matter.

Ps. Br. 11.

This ground of the breach of fiduciary duty claim fails for at least two reasons.  First,

the allegations of ¶¶ 108-10 that relate to this theory are conclusory, and "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."  *Iqbal*, 556 U.S. at 678.

Second, to the extent they are not conclusory, they are implausible when viewed in

tandem with other allegations in the SAC.  In ¶ 110, for example, plaintiffs allege:

> Ironically, on the very same date the Plan was amended by the
> Plan sponsor – October 17, 2012 – directing VIMCO to select
> one or more insurance annuity providers, VIMCO and the Plan
> fiduciaries selected a single insurer, Prudential, for the massive
> annuity transaction.   Self evidently, VIMCO and Plan
> fiduciaries did not prudently allow any period of time, much less
> a reasonable time period for consideration of whether to choose
> one or more annuity providers.  The amendment directing
> VIMCO in that regard was a ruse, as it was predetermined that
> Prudential would be the only provider.

SAC ¶ 110.  If this allegation were deemed non-conclusory, it would arguably state a

plausible claim that the fiduciaries selected Prudential on October 17, 2012—without

spending any time considering whether to choose one, or more than one, annuity provider,

or even a provider other than Prudential, since it had been predetermined that Prudential would be the only provider.  But the SAC itself refutes these allegations.  Paragraph 29 alleges that VCI and VIMCO entered into an engagement agreement with FCI on August 24, 2012, under which FCI was appointed "independent fiduciary."  *Id.* ¶ 29.   Under the engagement agreement—which allegedly was entered into almost two months before the fiduciaries selected Prudential—FCI was assigned duties that included representing the interests of the Plan and the participants and beneficiaries in connection with the selection of the insurance company or companies to provide an annuity, and the terms of the annuity contract or contracts, so that such selection and terms complied with the fiduciary standards, prohibited transaction restrictions, and all other applicable provisions of ERISA. *Id.* ¶ 29(A). FCI also undertook the duty to deliver to VIMCO, on or about September 8, 2012, a written determination stating whether the selection of the annuity provider or providers and the terms of the annuity contract or contracts complied with the fiduciary standards, prohibited transaction restrictions, and all other applicable provisions of ERISA. *Id.* ¶ 29(C).  In ¶ 106, plaintiffs suggest that the decision by VEBC and VIMCO either to allow, or to participate in, Verizon's selection of Prudential as the lone insurer was made directly or indirectly in reliance on FCI.[5]  And although the SAC makes other complaints about FCI,[6] it does not

---

[5]SAC ¶ 106 alleges:

> The decision by the Verizon EBC and VIMCO either directly or indirectly, by reliance upon FCI as an independent fiduciary proxy, to either allow, or participate in Verizon's selection of, Prudential as the <u>lone</u> insurer to issue an annuity subjects

allege that FCI failed to perform its duties concerning the selection of an annuity provider or providers well before the fiduciaries selected Prudential on October 17, 2012. Accordingly, the SAC itself alleges in ¶¶ 29 and 106 specific facts that refute the conclusory allegations in ¶ 110 that VIMCO and the Plan fiduciaries did not prudently allow any period of time, much less a reasonable time period, for consideration of whether to choose one or more annuity providers, and that the amendment directing VIMCO in that regard was a ruse, because it was predetermined that Prudential would be the only provider. Defendants therefore reasonably argue that "Plaintiffs' own allegations conclusively disprove their disingenuous suggestion that VIMCO and/or the Independent Fiduciary [FCI] selected Prudential as the sole insurer in a single day." Ds. Br. 15 (bracketed material added). The court concludes that plaintiffs have failed to state a plausible breach of fiduciary duty claim on this ground.

G

The court therefore holds that plaintiffs have failed to state a breach of fiduciary duty claim on which relief can be granted, and their second claim for relief is dismissed.

---

Plaintiffs Lee, McPartlin and all Transferee Class members to the risk of a single insurer undergoing some future unexpected and catastrophic event that could place many retirees and their beneficiaries in potential financial ruinous circumstances.

*Id.* ¶ 106.

[6]*See, e.g., id.* ¶ 32 ("When carrying out its appointed duties, FCI never communicated with any Plaintiff nor any of the Transferee Class members.").

IV

It is apparent from reading the SAC and plaintiffs' response brief that—at least with respect to the Transferee Class—plaintiffs fundamentally disagree with the premise that an ERISA pension plan can, as here, purchase an annuity to fund plan benefits and remove only some plan members, thereby eliminating the protections of ERISA and the PBGC for the removed members.  For example, plaintiffs argue:

> There is no federal regulation that either contemplates or countenances the very situation that occurred here.  Both the federal regulation and the interpretative bulletin referred to in support of Verizon Defendants' memorandum brief in support of their motion to dismiss address only the situations where there is either an annuity purchase at the beginning of a person's retirement or an annuity purchase when a standard termination occurs, affecting all plan participants. Neither the Annuitization Regulation nor the Interpretative Bulletin provide any approval for the Verizon Defendants' actions, which circumvented the stringent requirements of PBGC oversight attendant to a standard plan termination, as contemplated by ERISA[.] Verizon Defendants provide no case law authority construing the Annuity Regulation to cover any transaction other than a purchase of insurance annuity by pension plan at the onset of a participant's retirement or at the point of plan termination under ERISA[.]

Ps. Br. 6-7 (citations omitted).  But at bottom, plaintiffs are disagreeing with the rights of a settlor under ERISA, and such a disagreement must be addressed to Congress through requests for legislative changes to ERISA, not through litigation that complains of the decisions that ERISA empowers a plan sponsor as settlor to make.

*    *    *

Defendants' motion to dismiss plaintiffs' second amended complaint for declaratory and injunctive relief under ERISA is granted.   The claims of the Transferee Class are dismissed with prejudice under Rule 12(b)(6) for failure to state a claim on which relief can be granted.   The claim of the Non-Transferee Class is dismissed without prejudice under Rule 12(b)(1) for lack of constitutional standing.

**SO ORDERED**.

April 11, 2014.

SIDNEY A. FITZWATER
CHIEF JUDGE

- 19 -